IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Grayson Mathis, Sr., Individually and as the Personal Representative of the Estate of Grayson Mathis Jr., | ) ) ) ) ) | Case No. 8:22-cv-00234-DCC |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| Anderson County, Anderson County Sheriff's Office, City of Anderson, Chief Jim Stewart, Chad McBride, David McCuen, Officer Joseph Chapman, Zach Lucas, Craig Gardner, Bryce Jackson, William Busha, Chase Ginn, Cory Barrow, Daniel McCown, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Defendants' Motions for Summary Judgment. ECF Nos. 79, 80. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Kevin F. McDonald for pre-trial proceedings and a Report and Recommendation ("Report"). On May 29, 2024, the Magistrate Judge issued a Report recommending that the Motions be granted as to Plaintiff's federal causes of action and that Plaintiff's remaining claims be remanded

for further consideration.[1]  ECF No. 133.  The Magistrate Judge advised Plaintiff[2] of the procedures and requirements for filing objections to the Report and the serious consequences for failing to do so.  Plaintiff filed objections to the Report, and Defendants filed Replies.  ECF Nos. 140, 142, 143.

## APPLICABLE LAW

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *See Mathews v. Weber*, 423 U.S. 261 (1976).  The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made.  The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions.  *See* 28 U.S.C. § 636(b).  The Court will review the Report only for clear error in the absence of an objection.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

---

[1] In the same document, the Magistrate Judge also granted the Motion for Joinder and denied the Motion to Strike.

[2] Plaintiff, Grayson Mathis, Sr., brings this suit in his own capacity and as personal representative of the estate of Grayson Mathis, Jr. ("Mr. Mathis").

## ANALYSIS

As an initial matter, the Court finds that the Magistrate Judge has provided a thorough recitation of the relevant facts and applicable law, which the Court incorporates by reference.[3] The Court's review of this matter has been de novo.

### Plaintiff's Fourth Amendment Claims

Plaintiff contends that Officers Chapman and Lucas and Sergeant Gardner, acting with Deputy Jackson, used excessive force in deploying stop sticks. ECF No. 140 at 2. He also argues that Officers Chapman and Lucas initiated an improper pursuit and intentionally pursued extreme speeds with the knowledge that stop sticks had been deployed. *Id.* at 6. Plaintiff further contends that Sergeant Gardner failed to properly authorize, manage, control, or supervise the pursuit. ECF No. 53 at 12.[4]    As

---

[3] The Court notes that in Plaintiff's objections, he states that the Magistrate Judge's "recitation of fact accidently neglects or otherwise minimizes material sets of facts, including the respective Officers' failure to follow the City of Anderson Police Department's . . . pursuit policy, the lack of justification to initiate a pursuit, the repeated failure to terminate the pursuit, and the facts and information known to the Defendants at the actual moment deadly force was used, amongst other things." ECF No. 140 at 2. The Court disagrees that these facts are minimized in the Report and finds that the Magistrate Judge provided an accurate summary of the events and allegations. Regardless, the Court has specifically considered these facts in rendering its decision. To the extent Plaintiff raises other concerns with respect to the Magistrate Judge's factual recitation, the Court will address these objections below.

[4] The Magistrate Judge notes that, to the extent Plaintiff is alleging a Fourth Amendment claim based solely on the pursuit, such a claim is not cognizable because the pursuit itself does not constitute a seizure. ECF No. 133 at 14 n.2. Plaintiff has not objected to this conclusion; however, as noted above, the Court's review of the entirety of this action has been de novo. Upon such review, to the extent such a claim exists, it is dismissed.

acknowledged by the Magistrate Judge, and adopted by the undersigned, there is a genuine issue of material fact as to whether Mr. Mathis hit the stop sticks. Accordingly, for purposes of ruling on these Motions, the Court will consider that Mr. Mathis was "seized" as defined in *Graham v. Connor*, 490 U.S. 386 (1989). Therefore, the relevant inquiry is into whether the use of stop sticks was constitutionally unreasonable. *See id.*

As noted above, the Magistrate Judge provides a thorough recitation of the applicable law with respect to force in effectuating seizures, which the Court incorporates by reference. ECF No. 133 at 17–18. Briefly, a claim for excessive force is analyzed under an "objective reasonableness" standard. *Yates v. Terry,* 817 F.3d 877, 884 (4th Cir. 2016). The test for reasonableness pursuant to the Fourth Amendment is fact specific and includes consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tenn. v. Garner*, 471 U.S. 1, 8–9 (1985)) (the "*Garner* factors"). The Fourth Circuit has acknowledged that the second factor is "the most important." *Lewis v. Caraballo*, 98 F. 4th 521, 531 (4th Cir. 2024) (citations omitted).

In his objections, Plaintiff argues that the first *Garner* factor—the severity of the crime at issue—weighs in favor of finding that the use of force was unreasonable as the initial infraction was a stolen license plate. ECF No. 140 at 3. Plaintiff contends that the relevant policy forbade initiating a pursuit for such an offense; further, "even if the [C]ourt considers a subsequent offense committed <u>after</u> the Defendants initiated an improper and/or unlawful pursuit, the alleged and subsequent offense the moment the force was

4

used (speeding) is also a misdemeanor." *Id.* at 3–4. As to the second factor, Plaintiff argues that "Mr. Mathis did not pose an <u>immediate</u> threat to the safety of the officers or others." *Id.* at 4. Plaintiff primarily relies on the last five minutes of Officer Chapman's dash camera footage prior to the accident that allegedly shows "Mr. Mathis and Officers Chapman and Lucas . . . to be driving on a relatively rural highway" with an "apparent <u>lack</u> of vehicle traffic on the roadway." *Id.* Plaintiff also points to radio dispatch communication between Officers Chapman and Lucas, Sergeant Gardner, and Deputy Jackson, during which Officer Lucas reported "there is no traffic[.]" *Id.* Moreover, Plaintiff "takes issue" with the Magistrate Judge's finding that there was no evidence that Officer Chapman, Officer Lucas, or Sergeant Gardner "took any action to push the pursuit to extreme speeds" because such a finding is contrary to the City of Anderson Police Department's "official position . . . that the pursuit should have been terminated" and Officer Chapman's statement at the beginning of the pursuit to effect of "Yeah! Hell yeah, 10-0 Boys!" *Id.* at 6–7. Plaintiff asserts that "Defendants exhibited an unusual and unreasonable level of excitement to engage in a pursuit[,]" which "compelled their decisions to violate police policy and repeatedly decline to terminate the pursuit." *Id.* at 7.

In contrast, Defendants contend[5] that the Magistrate Judge correctly determined that the "deployment of stop sticks constituted a reasonable use of force[.]" ECF No. 143

---

[5] The Court notes that the City of Anderson Defendants, which include the City of Anderson, Joseph Chapman, Zach Lucas, Craig Gardner, William Busha, Chase Ginn, Cory Barrow, Daniel McCown, David McCuen, and Jim Stewart, filed a Reply. ECF No. 142. The Anderson County Defendants, which include Anderson County, Anderson County Sheriff's Office, Chad McBride, in his official capacity as Sheriff of the Anderson County Sheriff's Office, and Bryce Jackson, filed a separate Reply. ECF No. 143. The arguments contained in both Replies is largely similar, and, as a result, the Court will refer

at 6.  As to the first *Garner* factor, Defendants argue that Plaintiff fails to "address the Magistrate[] [Judge's] finding that Plaintiff's reckless driving similarly justified the pursuit." *Id.* at 7.  With the respect to the second factor, Defendants assert that Plaintiff's description of the last five minutes of Officer Chapman's dash camera footage is incorrect as "Mr. Mathis can be seen on the dash-camera video recording traveling at a high rate of speed throughout, passing more than twenty vehicles,[6] driving on the wrong side of the road, ignoring multiple stop signs and traffic signals, forcing two cars off the road, and engaging in a high-speed, dangerous [U]-turn." *Id.* at 8.  The City of Anderson Defendants contend that the City Officers did not cause or push the pursuit because "Plaintiff initiated the pursuit[,] and it was his sole decision to continue fleeing police."  ECF No. 142 at 5.  They also argue that "[t]he Magistrate [Judge] considered and appropriately rejected Plaintiff's arguments based on violations of City policy."  *Id.* at 6.  Further, the City of Anderson Defendants contend that Officer Chapman's statements at the beginning of the pursuit "are irrelevant in evaluating the reasonableness of the officers' actions."  *Id.*

Upon review of the Report, the record, and the applicable law, the Court agrees with the recommendation of the Magistrate Judge.  Here, the Magistrate Judge properly considered the *Garner* factors and correctly determined "that Deputy Jackson's use of the stop sticks was constitutionally reasonable and that no reasonable jury could conclude that Deputy Jackson did not have probable cause to believe that Mr. Mathis posed a

---

to all Defendants as "Defendants."  To the extent the Replies are different, the Court will acknowledge such.

[6] In their Reply, the City of Anderson Defendants argue that in the last five minutes of the dash camera footage, "Plaintiff encountered **34** vehicles all while erratically driving at speeds approaching 95 mph."  ECF No. 142 at 4.

threat of serious physical harm to the officers and others."  ECF No. 133 at 20.  Plaintiff

argues that the first factor weighs in his favor because the initial infraction was a stolen

license plate.  ECF No. 140 at 3.  However, as the Magistrate Judge acknowledged, "Mr.

Mathis subsequently fled from Officers Chapman and Lucas and engaged in driving that

was highly and imminently dangerous to the officers and the public[.]"  ECF No. 133 at

23.  The Magistrate Judge also correctly relied on *Scott v. Harris*, 550 U.S. 372, 385–86

(2007), in which the Supreme Court of the United States stated the following:

> [W]e are loath to lay down a rule requiring the police to allow
> fleeing suspects to get away whenever they drive *so
> recklessly* that they put other people's lives in danger.  It is
> obvious the perverse incentives such a rule would create:
> Every fleeing motorist would know that escape is within his
> grasp, if only he accelerates to 90 miles per hour, crosses the
> double-yellow line a few times, and runs a few red lights.  The
> Constitution assuredly does not impose this invitation to
> impunity-earned-by-recklessness.  Instead, we lay down a
> more sensible rule: A police officer's attempt to terminate a
> dangerous high-speed car chase that threatens the lives of
> innocent bystanders does not violate the Fourth Amendment,
> even when it places the fleeing motorist at risk of serious injury
> or death.

*Id.*

As to the second factor, the parties dispute the contents of the last five minutes of

Officer Chapman's dash camera footage.  *See* ECF Nos. 140 at 4; 143 at 8.  Upon review

of the footage, the Court finds that the Magistrate Judge correctly determined that the

second factor "clearly weigh[s] in favor of Deputy Jackson."  ECF No. 133 at 23–24.

During the five minutes of the dash camera footage preceding the accident, Mr. Mathis

drove at a high speed, passed more than twenty vehicles and numerous residential

properties, ignored stop signs, and, at times, drove on the wrong side of the road.  *See*

ECF No. 94-3.  Mr. Mathis's conduct "pose[d] an immediate threat to the safety of the officers or others."[7]  The Magistrate Judge correctly determined that "no reasonable jury could conclude that [Deputy Jackson] employed excessive force[8] in violation of Mr. Mathis's constitutional rights."   ECF No. 133 at 25.   Accordingly, this objection is overruled.[9]

The Magistrate Judge also addressed Officers Chapman and Lucas and Sergeant Gardner because "[P]laintiff . . . alleges that [they] used excessive force in violation of Mr. Mathis' Fourth Amendment rights by pushing the pursuit to extreme speeds and acting in concert with Deputy Jackson to deploy the stop sticks."   *Id.*   The Magistrate Judge correctly determined that because Deputy Jackson was not found to have used excessive force in deploying the stop sticks, "the actions of Officers Chapman and Lucas and Sergeant Gardner in requesting the Anderson County Sheriff's Office to deploy the stop sticks also were not excessive."   *Id.* at 26.   With respect to Plaintiff's objection that the Magistrate Judge erred by finding that there was no evidence that Officer Chapman,

_____

[7]  The Court notes that Plaintiff did not object to the Magistrate Judge's recommendation as to the third *Garner* factor.  Nevertheless, the Court finds that the third factor weighs in favor of the objective reasonableness of the deployment of the stop sticks because the dash camera footage clearly indicates that Mr. Mathis "attempt[ed] to evade arrest by flight."

[8] Plaintiff also "takes issue with the Magistrate[] [Judge's] unsupported assumption that 'Deputy Jackson clearly tempered his use of force.'"  ECF No. 140 at 5–6.  However, such language specifically refers to language used by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

[9]  The Court further finds that Officers Chapman's and Lucas's and Sergeant Gardner's acts of requesting the Anderson County Sheriff's Office to deploy the stop sticks were not excessive.

Officer Lucas, or Sergeant Gardner "took any action to push the pursuit to extreme speeds[,]" ECF No. 140 at 6, the dash camera footage only shows that law enforcement pursuing Mr. Mathis did not stop the pursuit. As there is no evidence that Defendants exacerbated or caused Mr. Mathis' high speeds, Plaintiff has failed to establish a constitutional violation. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834–35 (1998) (noting, in the Fourteenth Amendment context, that the officers "had done nothing to cause [the driver's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood police authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed"). Plaintiff also argues that Defendants violated "police policy" by continuing the pursuit; however, "a policy violation, without more, does not equate to a violation of the Constitution." ECF No. 133 at 24; *see also Lewis*, 523 U.S. at 855 ("Regardless [of] whether [law enforcement's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983."). In addition, while Officer Chapman stated at the beginning of the pursuit "Yeah! Hell yeah! 10-0 boys!", ECF No. 94-3 at 0:00:04–0:00:14, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will any officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 395. Accordingly, Plaintiff's objection that the Magistrate Judge erred by granting summary judgment as to his Fourth Amendment claims is overruled.

**Plaintiff's Fourteenth Amendment Claim—Level of Culpability**

Plaintiff filed no objection to the Magistrate Judge's recommendation "that [the] Fourteenth Amendment claim should be dismissed, as this claim is covered by the Fourth Amendment." ECF No. 133 at 28. Upon review, the Court finds that the Magistrate properly found that Plaintiff's claim under the Fourteenth Amendment should be dismissed because he has a cause of action under the Fourth Amendment. However, out of an abundance of caution and given the severity of the allegations, the Court will review the merits of Plaintiff's claim under the Fourteenth Amendment.

Plaintiff objects to the Magistrate Judge's recommendations related to the merits of his Fourteenth Amendment claim. Specifically, Plaintiff contends "that even though the pursuit did involve high speeds, the totality of the circumstances and evidence in the record could allow a reasonable jury to conclude that the Defendants manifested a deliberate indifference to a serious threat of harm or death to Mr. Mathis." ECF No. 140 at 7−8.

As noted above, the Magistrate Judge provides a thorough recitation of the applicable law with respect to a violation of substantive-due-process rights under the Fourteenth Amendment, which the Court incorporates by reference. Briefly, "[t]o prove a violation of substantive-due-process rights under the Fourteenth Amendment, a plaintiff must show that a defendant's behavior was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Wash. v. Hous. Auth. of the City of Columbia*, 58 F. 4th 170, 177 (4th Cir. 2023) (citations and internal quotation marks omitted). For a defendant's behavior to shock the conscience, "a defendant's behavior

10

must lack any reasonable justification in the service of a legitimate governmental objective." *Id.* (citation and internal quotation marks omitted). The United States "Supreme Court has described a culpability spectrum along which behavior may support a substantive due process claim." *Id.* (citation and internal quotation marks omitted). Such behavior includes "conduct intended to injure . . . in some way unjustifiable by any governmental interest" and conduct that negligently inflicts harm. *Id.* at 177–78 (citation and internal quotation marks omitted). Deliberate indifference conduct is conduct between the ranges and "is an intermediate level of culpability that can, if proven, also establish a due process violation." *Id.* at 178 (citation and internal quotation marks omitted).

In his objections, Plaintiff argues that the deliberate indifference standard should apply to the present case because "the totality of the circumstances and evidence in the record could allow a reasonable jury to conclude that the Defendants manifested a deliberate indifference to a serious threat of harm or death to Mr. Mathis." ECF No. 140 at 8. While Plaintiff acknowledges that an intent to harm standard governs high-speed chases between individuals suspected of crimes and law enforcement, he asserts that the deliberate indifference standard be applied because the five minutes preceding the accident "afforded the Defendants sufficient time to deliberate and weigh the consequences of their actions[.]" *Id.* Plaintiff further contends that no matter the standard used, the totality of the circumstances indicate that law enforcement was "not legitimately engaged in an emergent pursuit" because "they created and initiated against policy, repeatedly continued and failed to terminate in contravention of policy; and did so under

circumstances where . . . they repeatedly memorialized their contemporaneous assessment of the risk to the public[.]" *Id.* at 8–9. Plaintiff relies, in part, on Officer Chapman's statement at the beginning of the pursuit, the dash camera footage, and the fact that "Defendants . . . had not radioed in for poor traffic conditions, danger to other motorists, or danger to officers, and that [Mr.] Mathis was driving at a high rate of speed." *Id.* at 10.

Plaintiff argues that the Magistrate Judge impermissibly based the Report on a credibility determination of law enforcement's testimony by finding "that there was a threat of harm to the public" and "a legitimate basis to pursue[.]" *Id.* at 9. According to Plaintiff, the Magistrate Judge also "necessarily ignores conflicting testimony . . . establish[ing] that the [City of Anderson Police Department] determined that the pursuit was improper[] [and] should have been terminated on multiple occasions[.]" *Id.* at 9. Plaintiff also asserts that the Magistrate Judge "attempt[ed] to adopt a paradigm[,] which apparently posits that if an officer is involved in a high-speed pursuit, the analysis must automatically and necessarily be predicated on an assumption that the officers were facing unforeseen circumstances, acting in haste and under pressure, forced to make split-second decisions, etc." *Id.* at 10–11. Lastly, Plaintiff contends that the Magistrate Judge "assume[d] that officers engaged in a high-speed pursuit automatically weigh complex and competing obligations about how to enforce the law." *Id.* at 11.

In contrast, Defendants contend that the Magistrate Judge correctly concluded that their Motions for Summary Judgment should be granted as to the merits of Plaintiff's Fourteenth Amendment claim. ECF No. 142 at 7. Defendants argue that the Magistrate

Judge correctly determined that the intent to harm standard applies to the present case because it involves a high-speed pursuit. *Id.* Further, Defendants assert that the Magistrate Judge appropriately rejected the application of *Dean v. McKinney*, 976 F.3d 407, 415 (4th Cir. 2020), because it involved an emergency that ceased prior to a collision, unlike the present case. *Id.* They also contend that Plaintiff's arguments related to policy infractions, law enforcement creating and pushing the pursuit, and danger to law enforcement and the public during the five minutes preceding the accident, "were addressed and appropriately rejected by the Magistrate." *Id.* at 8. As to Plaintiff's arguments that the Magistrate Judge attempted to adopt a paradigm and made assumptions as to the circumstances before law enforcement, Defendants argue that "[t]here is absolutely no evidence that the Court was advocating such an approach[,] and it is certainly not included in the Report." *Id.*

Upon review of the Report, the record, and the applicable law, the Court agrees with the recommendation of the Magistrate Judge. Here, the Magistrate Judge correctly determined that the intent to harm standard applies as to Officers Chapman and Lucas and Sergeant Gardner. ECF No. 133 at 32. In *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998), the Supreme Court stated as follows:

> [T]he police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance. A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed

> threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.
>
> To recognize a substantive due process violation in these circumstances when only midlevel fault has been shown would be to forget that liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.   When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking.   But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed.   Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case.   Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983.

*Id.* at 853–54 (citations and internal quotation marks omitted).   The Magistrate Judge appropriately applied the intent to harm standard given that "there was a high-speed chase and Officers Chapman and Lucas and Sergeant Gardner were faced with unforeseen circumstances that demanded their instant judgment[.]"  ECF No. 133 at 32. Further, the Magistrate Judge correctly rejected the deliberate indifference standard.  *Id.* While Plaintiff argues "that the five . . . minutes leading up to the [accident] . . . afforded the Defendants sufficient time to deliberate and weigh the consequences of their actions," ECF No. 140 at 8, a review of the dash camera footage shows law enforcement engaged in a high-speed pursuit, during which Mr. Mathis drove past more than 20 other vehicles and drove on both sides of the road, *see* ECF No. 94-3.   The Magistrate Judge appropriately concluded that the deliberate indifference standard does not apply "given

the totality of the circumstances and the fact that these defendants were forced to make decisions with competing obligations in haste and under pressure." ECF No. 133 at 32. To the extent Plaintiff argues that such a determination attempts to adopt a paradigm and makes assumptions about the decisions law enforcement faced during high-speed pursuit, ECF No. 140 at 10–11, the Magistrate Judge only acknowledged that law enforcement in this case made decisions while engaged in a high-speed pursuit initiated by Mr. Mathis, ECF No. 133 at 32, as indicated by the dash camera footage, which supports applying the intent to harm standard.

The Magistrate Judge also correctly determined that "no reasonable jury could conclude that Officers Chapman and Lucas and Sergeant Gardner intended to harm Mr. Mathis in some way unjustifiable by any governmental interest." ECF No. 133 at 32. Plaintiff asserts that "a reasonable jury could . . . conclude that Defendants Chapman, Lucas, Gardner, and Jackson . . . manifested some manner of intent to harm in a way that was not justified by a government interest." ECF No. 140 at 9. Plaintiff relies, in part, on Officer Chapman's remarks at the beginning of the pursuit and that fact "that were was no immediate threat of harm to the public and that the deployment of stop sticks on a motor vehicle at a high rate of speed constituted an inherent disregard for a risk of serious bodily harm and/or death." *Id.* at 10. However, the Magistrate Judge appropriately concluded that these Defendants "did not induce Mr. Mathis' behavior and were forced to make hurried decisions about how to respond, weighing complex and competing obligations about enforcing the law, detaining Mr. Mathis, and the danger to Mr. Mathis, themselves, and the public." ECF No. 133 at 33; *see also Lewis*, 523 U.S. at 855 (stating that "[law enforcement] had done nothing to cause [the driver's] high-speed driving in the

first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes").     Accordingly, Plaintiff's objections with respect to his Fourteenth Amendment claim as it relates to Officers Chapman and Lucas and Sergeant Gardner are overruled.

As to Deputy Jackson, the Magistrate Judge correctly determined "that the intent to harm standard is appropriate for assessing Deputy Jackson's conduct."[10]  ECF No. 133 at 34–35.  Plaintiff argues that "at the moment the stop sticks were deployed, Defendants knew that they had not radioed in for poor traffic conditions, danger to other motorists, or danger to officers, and that Mathis was driving at a high rate of speed."  ECF No. 140 at 10.  However, similar to his findings concerning Officers Chapman and Lucas and Sergeant Gardner, the Magistrate Judge appropriately concluded "that there is no evidence that Deputy Jackson intended to injure Mr. Mathis in some way unjustifiable by any governmental interest."  ECF No. 133 at 35.  Specifically, Deputy Jackson acted in furtherance of a justifiable governmental interest in attempting to terminate Mr. Mathis's dangerous driving at a time when Mr. Mathis posed a significant threat to the officers, pedestrians, and other motorists.  Accordingly, Plaintiff's objections with respect to his

---

[10] The Magistrate Judge appropriately distinguished *Dean v. McKinney*, 976 F.3d 407, 415 (4th Cir. 2020), a case relied on by Plaintiff in his Motion for Summary Judgment, by stating that "[u]nlike *Dean*, where the emergency had ceased, Deputy Jackson was still very much facing an emergent high-speed chase at the time in question, and this chase was dangerous and fluid in nature, and involved a suspect traveling over 90 mph." ECF No. 133 at 34.

Fourteenth Amendment claim as it relates to Deputy Jackson are overruled.[11]

### Plaintiff's Fourteenth Amendments Claims—Duty to Render Aid

Plaintiff objects to the Magistrate Judge's recommendations related to his Fourteenth Amendment claim for a failure to render aid. ECF No. 140 at 11. Specifically, Plaintiff argues "that a reasonably jury could plausibly conclude that the Defendants were deliberately indifferent in their failure to render aid to Mr. Mathis." *Id.* As noted above, the Magistrate Judge provides a thorough recitation of the applicable law with respect to a Fourteenth Amendment claim for failure to render aid, which the Court incorporates by reference. Briefly, the Due Process Clause of the Fourteenth Amendment does not confer on the government a duty to render aid. *Patten v. Nichols*, 274 F.3d 829, 836 (4th Cir. 2001). However, "[t]here are . . . certain exceptions to this general rule." *Id.* Applicable here is the exception whereby "the state [is obligated] to provide medical care to suspects injured while being apprehended by the police." *Id.* at 837 (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). This exception and others "are rooted in the fact the state has custody over the person asserting the claims[.]" *Id.*

In his objections, Plaintiff "argues that the bodycam and dashcam evidence of the Defendants at the collision scene . . . plainly shows that the Plaintiff's vehicle was not immediately and fully engulfed in flames." ECF No. 140 at 12. In support of his

---

[11] The Court further agrees with the Magistrate Judge that, even applying a deliberate indifference standard to Deputy Jackson's conduct, Plaintiff's claim still fails. *See* ECF No. 133 at 35 n.7.

argument, Plaintiff asserts "that while the underside of [Mr. Mathis'] vehicle is on fire, the top is not." *Id.* Moreover, Plaintiff contends that the evidence in the record does not support a finding that Defendants attempted to render aid to Mr. Mathis. *Id.* He also argues that the Magistrate Judge failed to account for Officer Ginn's deposition testimony in which he stated that "the person that done what he done to get in that position and his car bursts into flames, I'm not going to risk my life[.]" ECF No. 94-9 at 10.

In contrast, Defendants contend that "Plaintiff's argument flies in the face of the factual record before the Court and the video evidence." ECF No. 143 at 12. Defendants argue that "the video makes readily clear that less than five seconds after Mr. Mathis crashed, the flames from the crash were roughly ten feet tall." *Id.* They also assert that they there is no evidence of deliberate indifference because "officers approached the car, radioed EMS, and even made attempts to find a hose to put out the fire." *Id.*

Upon review of the Report, the record, and the applicable law, the Court agrees with the recommendation of the Magistrate Judge. Here, the Magistrate Judge properly recommended granting Defendants' Motions for Summary Judgment as to Plaintiff's Fourteenth Amendment claim for failure to render aid. As a threshold matter, the Magistrate Judge appropriately concluded that "the duty to render aid under the Due Process Clause was triggered based on the defendants engaging in affirmative acts to restrain Mr. Mathis' personal liberty through the use of stop sticks." ECF No. 133 at 37; *see Cheeks v. Belmar*, 80 F. 4th 872, 877 (8th Cir. 2023) (stating that "[w]hen the state limits an individual's freedom to act on his own behalf, by intentionally conducting a maneuver that causes a vehicle to spin out and collide with a tree, the duty arises to

provide medical care to persons . . . who have been injured while being apprehended by the police") (citations and internal quotation marks omitted).

As to the standard by which to address Plaintiff's failure to render aid claim, the Magistrate Judge noted that "[t]he Supreme Court has declined to define the standard for which to assess failure to render aid claims when an individual was injured while being apprehended by the police." ECF No. 133 at 38 (citations omitted). The Magistrate Judge properly determined that "[e]ven assuming that the lower culpability standard of deliberate indifference is appropriate under these circumstances, the undersigned finds that the defendants did not violate Mr. Mathis' Fourteenth Amendment rights." *Id.* (citation omitted). Plaintiff argues that the Magistrate Judge's findings contradict the video camera footage. ECF No. 140 at 11–12. However, Officer Chapman's dash camera footage shows that by the time he stopped his vehicle, a large fire had erupted from Mr. Mathis' vehicle. ECF No. 94-3 at 0:10:30–0:10-40. In fact, the footage shows that immediately after fire erupted from the vehicle, several law enforcement officers ran towards it. *Id.* at 0:10:44–0:11:01 Officer Ginn's body camera footage, another law enforcement officer who arrived on scene, shows that by the time he arrived at the accident, Mr. Mathis' vehicle was fully engulfed in flames, and he shouted "Grab the fire extinguisher! Fire extinguisher[.]" ECF No. 98-4 at 0:00:13–0:00:16. Officer Ginn's body camera footage also shows Officer Barrow running towards nearby residents and asking for a water hose. *Id.* at 0:00:37–0:00:45 In addition, deposition testimony indicates that law enforcement could not approach Mr. Mathis' vehicle because of the heat from the fire. ECF Nos. 79-18 at 2; 79-19 at 2; 79-20 at 2; 79-21 at 2; 79-23 at 2; 80-5 at 12; ECF No. 80-9 at 2. It

is also noteworthy that Mr. Mathis' vehicle contained ammunition, which exploded after the accident occurred.  *See* ECF Nos. 79-18 at 2; 79-21 at 2; 80-5 at 12.  Given the actions taken by Defendants and the vehicle's condition following the accident, no reasonable jury could conclude that Defendants violated Mr. Mathis' rights under the Fourteenth Amendment by failing to render aid.  Accordingly, Plaintiff's objections with respect to his Fourteenth Amendment failure to render aid claim are overruled.

### *Monell* Claims

Plaintiff objects to the Magistrate Judge's recommendation that the City of Anderson Defendants' Motion for Summary Judgment be granted as to Plaintiff's *Monell*[12] claims.  ECF No. 140 at 12.  The Magistrate Judge provides a thorough recitation of the applicable law with respect to *Monell* claims, which the Court incorporates by reference.  Briefly, a claimant may establish a *Monell* "against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an official policy or custom."  *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F. 4th 529, 532–33 (4th Cir. 2024) (citation and internal quotation marks omitted).  In addition, a claimant must also establish "a predicate constitutional violation to proceed[,] [f]or supervisors and municipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual [state] officer, at least in suits for damages."  *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) (citations and internal quotation marks omitted).

---

[12] *See Monell v. Department of Social Services,* 436 U.S. 658 (1978).

Plaintiff only objects that the Magistrate Judge erred because he "did set forth cognizable claims under the Fourth and Fourteenth Amendments."  ECF No. 140 at 12.  In contrast, the City of Anderson Defendants argue  that "the Magistrate [Judge] correctly concluded that there were no violations of the Plaintiff's Constitutional rights."  ECF No. 142 at 9.  As set forth above, the Court finds that Plaintiff has not established an underlying constitutional claim; as a result, his *Monell* claims also fail.  *See Evans*, 703 F.3d at 654 (stating that "supervisors and municipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual [state] officer, at least in suits for damages") (citations and internal quotation marks omitted).  Accordingly, Plaintiff's objection is overruled.

### *Qualified Immunity*

Plaintiff objects to the Magistrate Judge's finding that Defendants are entitled to qualified immunity.  ECF No. 140 at 13.  The Magistrate Judge provides a thorough recitation of the applicable law with respect to qualified immunity, which the Court incorporates by reference.   Briefly, "[g]overnment officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  However, "qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right."

21

*Heath v. Coll. of Charleston*, C.A. No. 2:17-cv-01792-PMD-JDA, 2018 WL 3353063, at *3 (D.S.C. June 15, 2018).

Plaintiff only objects "that the individual Defendants are not entitled to qualified immunity because a reasonable jury could find that a constitutional violation occurred[,] and the Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments were clearly established at the time of the underlying events." ECF No. 140 at 13.

The Court has determined that Plaintiff has not established a constitutional violation; accordingly, Defendants are entitled to qualified immunity. Thus, Plaintiff's objection is overruled.

***State Law Claims***

Plaintiff filed no objection to the Magistrate Judge's finding that "the applicable factors support[] declining to exercise supplemental jurisdiction." ECF No. 133 at 43. Upon review, the Court agrees with the Magistrate Judge that exercising supplemental jurisdiction over Plaintiff's state law claims is not appropriate here. The Magistrate Judge provides a thorough recitation of the applicable law with respect to supplemental jurisdiction, which the Court incorporates by reference. Briefly, 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (holding that the district court did not abuse its discretion in declining to retain

jurisdiction over the state law claims) (citation omitted).  In determining whether to retain jurisdiction, courts consider the "convenience and fairness to the parties, existence of any underlying issues of federal policy, comity, and considerations of judicial economy."  *Id.* (citations omitted).  Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims because the balance of the appliable factors favors such a result.  *See* ECF No. 133 at 43–44.

## CONCLUSION

For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge.  Defendants' Motions for Summary Judgment [79], [80] are **GRANTED in part** as to Plaintiff's Fourth, Fourteenth, and *Monell* claims.  The Court declines to exercise supplemental jurisdiction and the remaining claims are **REMANDED** to the Court of Common Pleas for the Tenth Judicial Circuit.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

September 3, 2024
Spartanburg, South Carolina